UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID MOODY,

        Plaintiff,

v.

        File No. 1:13-CV-1104

        HON. ROBERT HOLMES BELL

CITIMORTGAGE, INC. and
TROTT & TROTT, P.C.,

        Defendants.
                                          /

**<u>OPINION</u>**

This case is brought by a homeowner against a mortgage servicer and its law firm for: violation of the Real Estate Settlement Practices Act (RESPA), 12 U.S.C. § 2605(e); violation of the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. §§ 1962, 1964; common law fraud; and for declaratory judgment. Defendants have filed independent Motions to Dismiss for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). (ECF Nos. 7, 11.) Plaintiff has filed a Response (ECF No. 13) only to Defendant CitiMortgage, Inc.'s (CMI) motion, to which Defendant CMI has filed a Reply (ECF No. 14). Finally, Defendant CMI has filed a Motion to Cite New Authority (ECF No. 15). The Court holds that oral argument is unnecessary for disposition of the motions.

For the reasons that follow, the Court will grant both motions to dismiss and will dismiss with prejudice Plaintiff's complaint. Because the motions are decided without reference to Defendant CMI's new authority, the Court will deny its motion to cite the same as moot.

**I.**

In 2002, Plaintiff bought residential real estate in Grand Rapids, Michigan. He financed the

purchase through a mortgage. Defendant CMI became the servicer of the loan by assignment. Defendant CMI told Plaintiff in Fall 2008 that "he could skip his payment for December at Christmastime, and make up the payment by paying increased payments starting in January, 2009." (Compl. ¶ 8, ECF No. 1.) Plaintiff was supposed to receive written confirmation of this arrangement, but never did. Plaintiff began receiving statements requiring what amounted to double payments in January 2009. In February 2009, Plaintiff contacted Defendant CMI about the increased payment amount and was told it was a clerical error that was being corrected. However, late fees and penalties were assessed that Plaintiff was told he would later have to dispute.

In April 2009, Plaintiff began closely monitoring his payments to Defendant CMI and obtaining confirmation numbers of each payment. He continued this practice through April 2010. In March through May of 2010, Plaintiff began to receive notices from Defendant CMI, informing him of overdue balances, late fees, and delinquency fees. Plaintiff did not understand why his account was seemingly in arrears and over the next few months he attempted to speak to management at Defendant CMI and bring his account up to date.

On August 16, 2010, Plaintiff received a letter from Defendant Trott & Trott, Defendant CMI's counsel, stating that the amount to reinstate his loan was $5,735.79. The letter was dated July 8, 2010, and stated that the reinstatement amount was due on August 16, 2010.

Finally, on October 8, 2010, Plaintiff sent a letter (the Letter) to Defendant CMI, mailing it to Defendant Trott & Trott. The Letter outlined "the events that had traspired between the fall of 2008 and October 2010" and requested "clarification regarding the irregularities in connection with the servicing" of Plaintiff's loan. (Compl. ¶ 23.) Plaintiff received a letter in late October acknowledging his inquiry and stating that his account was in foreclosure. In mid-November he

received a letter that stated his account had been investigated and that the fees assessed were valid per his loan agreement, and included a copy of his payment history, the note, and the mortgage. The letter included a toll-free number and a Default Research Specialist's name for Plaintiff to contact. Plaintiff attempted to call the Default Research Specialist, but the number on the letter connected him to an unrelated party. Between November 2010 and March 2011, Plaintiff continued unsuccessfully to attempt to get more information about the charges on his account.

In March 2011, Plaintiff retained counsel, who began to attempt to negotiate with Defendant Trott & Trott on Plaintiff's behalf. That same month, Defendant CMI informed Plaintiff that his property was in foreclosure and that it could not accept payments directly. In May 2011, Plaintiff paid the current reinstatement amount to Defendant Trott & Trott.

## II.

**A.**     **Motion Standards**

In reviewing a Rule 12(b)(6) motion to dismiss, the Court must "'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff,'" *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 992 (6th Cir. 2009) (quoting *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008)), but "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 276 (6th Cir. 2010) (internal citations omitted). Under the federal notice pleading standards, a complaint must contain "a short and plain statement of the claim showing how the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this statement is to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts that "state a claim to relief that is plausible on its face," and that, if accepted as true, are sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. 678. "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 677), *cert. denied*, 132 S. Ct. 1583 (2012). Where a complaint pleads facts that are merely consistent with a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Further, under Rule 10(c), the court can consider the exhibits attached to the complaint without converting defendants' Rule 12(b)(6) motion into a motion for summary judgment. FED. R. CIV. P. 10(c); *see Koubriti v. Convertino*, 593 F.3d 459, 462 n.1 (6th Cir. 2010) ("Documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss."). Additionally, the Court may also consider "'exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained

4

therein,' without converting the motion to one for summary judgment." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)).

**B.     RESPA Claims**

The provision of RESPA relevant to the present case is the requirement that loan servicers respond in a certain amount of time and in a certain way to Qualified Written Requests (QWR) from the borrower for information about the account or for corrections to be made to the account. 12 U.S.C. § 2605(e). Prior to its amendment by the Dodd-Frank Wall Street Reform and Consumer Protection Act, 124 Stat. 1376[1], section 2605(e) provided that upon receipt of a QWR, a loan servicer must first, within 20 days, acknowledge receipt of the QWR in writing.

The servicer's further duties are dictated by the nature of the QWR. If the borrower is seeking information, the servicer must within 60 days of receipt of the QWR conduct an investigation and give the borrower a written statement that provides: the requested information or an explanation of why the information is not available; and the contact information of a person or department that can process further inquiries. 12 U.S.C. § 2605(e)(2)(C).

If the QWR requests a correction be made to the account, the servicer must within 60 days either (1) make appropriate corrections to the account and inform the borrower in writing of the corrections; or (2) conduct an investigation and provide the borrower a written statement that explains why the account is correct and give the borrower the contact information of a person or department that can process further inquiries. 12 U.S.C. § 2605(e)(2)(A)–(B).

---

[1] Because the operative facts of the present suit occurred before the effective date of Dodd-Frank, the Court will apply the law as it existed then.

These duties are only triggered, however, if: (1) the servicer receives a QWR; and (2) the written correspondence meets the statutory definition of a QWR. 12 U.S.C. § 2605(e)(1)(A). To be a QWR, the correspondence must (1) be written; (2) not be included with a payment; (3) include the name and account number of the borrower, or a way to enable the servicer to identify the account; and (4) include a statement of the reasons the borrower believes the account to be in error, or include sufficient detail to enable the servicer to determine what information is being sought. 12 U.S.C. § 2605(e)(1)(B).

In 24 C.F.R. § 3500.21(e), the Department of Housing and Urban Development (HUD), issued further guidelines on the "Duty of loan servicer to respond to borrower inquiries." Section 3500.21(e)(i) repeats nearly verbatim the statutory definition of a QWR. The regulation adds to the statute, in that it give servicers a right not enumerated in the statute. "[A] servicer may establish a separate and exclusive office and address for the receipt and handling of qualified written requests." 24 C.F.R. § 3500.21(e)(1).

The Sixth Circuit has not addressed squarely whether 24 C.F.R. § 3500.21 adds a substantive requirement to QWRs. Many courts that have considered the question have concluded that it does, and if a servicer has established a separate and exclusive address for receiving QWRs, a borrower's correspondence must be sent to that address to trigger the servicer's obligations under RESPA. *See Jestes v. Saxon Mortg. Servs., Inc.*, No. 2:11-59, 2014 WL 1847806 (M.D. Tenn. May 8, 2014); *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1148–49 (10th Cir. 2013); *Roth v. CitiMortgage Inc.*, No. 12-CV-2446, 2013 WL 5205775 (E.D.N.Y. Sept. 11, 2013); *Quenroe v. Mortg. Elec. Registration Sys., Inc.*, No. CIV. 09-3439, 2012 WL 425175 (D. Minn. Feb. 9, 2012); *Steele v. Green Tree Servicing, LLC*, No. 3:09-CV-603-D, 2010 WL 3565415 (N.D. Tex. Sept. 7, 2010) *aff'd sub*

*nom. Steele v. Green Tree Servicing, L.L.C.*, 453 F. App'x 473 (5th Cir. 2011); *Daddabbo v. Countrywide Home Laons, Inc.*, No. C09-1417, 2010 WL 4262027 (W.D. Wash. Oct. 27, 2010); *Childless v. CitiMortgage, Inc.*, No. CIV. 08-1137, 2010 WL 9951758 (D.N.M. Feb. 19, 2010); *Lemieux v. Lipton Loan Servicing, LP*, 2:09-CV-2816, 2009 WL 5206641 (E.D. Cal. Dec. 22, 2009); *Catalan v. RBC Mortg. Co.*, No. 05 C 6920, 2008 WL 2741159 (N.D. Ill. July 8, 2008); *Bally v. Homeside Lending, Inc.*, No. 02 C 5799, 2005 WL 2250856 (N.D. Ill. Sept. 8, 2005).

A handful of courts have reached the opposite conclusion, holding that the regulation merely *allows* a servicer to establish a separate and exclusive address, but that it does not require a borrower to send QWRs to that address. *See Benner v. Bank of Am.*, 917 F. Supp. 2d 338 (E.D. Pa. 2013); *Vought v. Bank of Am., N.A.*, No. 10-CV-2052, 2010 WL 4683596 (C.D. Ill. Oct. 27, 2010). Still other courts have refused to enforce a requirement that a QWR be sent to a separate and exclusive address where insufficient evidence had been presented that the servicer had given notice of the address. *Mazed v. JP Morgan Chase Bank, N.A.*, No. SACV 11-814, 2014 WL 1364929 (C.D. Cal. Apr. 7, 2014); *Rourke v. Bank of Am. Nat. Ass'n*, No. 4:12-CV-42, 2012 WL 3745953 (M.D. Ga. Aug. 28, 2012); *Goldman v. Aurora Loan Servs., LLC*, No. 1:09-CV-3337, 2011 WL 35845498 (N.D. Ga. Aug. 29, 2011); *McLean v. GMAC Mortg. Corp., Inc.*, No. 06-22795-CV, 2008 WL 5246149 (S.D. Fla. Dec. 16, 2008).

The Supreme Court has held that when an agency promulgates implementing regulations, a court should give the regulation controlling weight as long as "the agency's reading fills a gap or defines a term in a reasonable way in light of the Legislature's design, . . . even if it is not the answer the court would have reached if the question initially had arisen in a judicial proceeding" *Regions Hosp. v. Shalala*, 522 U.S. 448, 457 (1998). In *Berneike*, the Tenth Circuit held that "[failure to send

the QWR to the designated address 'for receipt and handling of [QWRs]' does not trigger the servicer's duties under RESPA." 708 F.3d at 1149. The court explained that "[c]ommunication failing to meet the requirements of RESPA and its implementing regulation amounts to nothing more than general correspondence between a borrower and servicer." *Id.* This reasoning has been adopted within this circuit, *see Jestes,* supra at *6, and this Court also agrees.

Defendant CMI argues that the Letter was not a QWR because Plaintiff failed to send it to its separate and exclusive address for handling of QWRs. Defendant CMI argues that it had established a separate and exclusive address for receipt of QWRs by placing on its customer's statements:

> **For Residential Customers Only:** PURSUANT TO § 6 OF RESPA, A "QUALIFIED WRITTEN REQUEST" REGARDING THE SERVICING OF YOUR LOAN MUST BE SENT TO THIS ADDRESS: CITIMORTGAGE, INC., ATTN: CUSTOMER RESEARCH TEAM, PO BOX 10002, GAITHERSBURG, MD 20898-9442. A "qualified written request" is written correspondence, other than notice on a payment coupon or statement, which includes your name, account number and the reason(s) for the request.

(Ex. A, ECF No. 12-2.) Defendant CMI also submitted a statement identical to the above, with an address in Gaithersburg, Maryland. (Ex. B, ECF No. 12-3.) Defendants state that this change reflected the fact that they had moved their exclusive address for receiving QWRs to a new location. These exhibits are properly considered as part of the motion to dismiss because Plaintiff references statements he received in the complaint, and whether Defendant CMI established a separate and exclusive address is central to his claim.

Plaintiff sent the Letter to Defendant CMI through Defendant Trott & Trott at its office in Michigan. Plaintiff argues that he was instructed to "direct all inquiries regarding his loan to" Defendant Trott & Trott. (Compl. ¶ 22.) Plaintiff repeats this contention in his Response as his sole

8

argument as to why Defendant CMI had not established an exclusive address for receipt of QWRs. Plaintiff argues, therefore, that Defendant CMI had not established a separate and exclusive address for receiving QWRs because it instructed him to send *all* inquiries to Defendant Trott & Trott.

This paragraph of Plaintiff's complaint refers to a letter he received from Defendant Trott & Trott as evidence. (Pl.'s Ex. D, ECF No. 2-3.) However, instead of directing Plaintiff to direct *all* inquiries to Defendant Trott & Trott, the portion of the letter attached as Exhibit D merely instructs Plaintiff to "forward funds" to Defendant Trott & Trott's location in Farmington Hills, Michigan.

While a Court considering a motion under Rule 12(b)(6) usually must accept a plaintiff's allegations as true, "It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 454 (7th Cir. 1998). A "court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint." *Saldate v. Wilshire Credit Corp.*, 686 F. Supp. 2d 1051, 1059 (E.D. Cal. 2010) (quoting *Sumner Peck Ranch v. Bureau of Reclamation*, 823 F.Supp. 715, 720 (E.D.Cal.1993)). Here, Plaintiff's attached exhibit, which only instructs him to forward funds to Defendant Trott & Trott clearly contradicts his allegation that he was instructed to send all inquiries to Defendant Trott & Trott. The Court will therefore not accept that allegation as true.

The Court concludes, therefore, based upon the evidence submitted by the parties, that Defendant CMI did in fact establish a separate and exclusive address for the receipt of QWRs and that the Letter, sent to Defendant Trott & Trott, was "nothing more than general correspondence between a borrower and servicer." *Berneike*, 708 F.3d at 1149. Plaintiff's Letter was not a QWR, and

therefore did not trigger Defendant CMI's duties under RESPA. The Court recognizes that Plaintiff's interactions with Defendants, as detailed above, may have been frustrating, but it cannot conclude that those interactions violated RESPA.

**C.      Remaining Claims**

The remainder of Plaintiff's complaint alleges a civil RICO conspiracy (Count II) among Defendants and common law fraud (Count III) as to all Defendants and requests declaratory judgment (Count IV) that 24 C.F.R. § 3500.21 does not require a borrower to send correspondence to an address designated by the loan servicer for that correspondence to be considered a QWR.

Defendant Trott & Trott moved for dismissal for failure to state a claim upon which relief can be granted (ECF No. 7) for the three Counts alleged against it on December 3, 2013. Plaintiff never responded to that motion. Similarly, although Defendant CMI presented arguments with respect to Counts II and III, Plaintiff's only response in his brief was to summarize Defendant CMI's arguments and then to state "the allegations of the Complaint speak for themselves[.]" (Pl.'s Resp. 7, ECF No. 13.)

A plaintiff must oppose a defendant's motion to dismiss or otherwise respond or he waives opposition to the motion. *Humphrey v. United States Attorney Gen.'s Office*, 279 F. App'x 328, 331 (6th Cir. 2008) (holding that where a "plaintiff has not raised arguments in the district court by virtue of his failure to oppose defendants' motions to dismiss, the arguments have been waived."); *Scott v. State of Tenn.*, 878 F.2d 382 (table), 1989 WL 72470, at *2 (6th Cir. 1989) ("[I]f a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion.").

Here, Plaintiff has waived any opposition he may have had to Defendant Trott & Trott's

motion to dismiss by failing to respond to it. Similarly, the Court holds that his cursory response to Defendant CMI's arguments as to why the Court should dismiss Counts II and III "fail[s] to respond or to otherwise oppose [D]efendant's motion."

Defendants both argue in their briefs that Plaintiff's RICO claim fails because: (1) Plaintiff has merely recited the definition of an enterprise from the RICO statute, but has pled no specific facts that demonstrate an association-in-fact; (2) that Plaintiff has failed to plead any pattern of illegal activity; (3) that Plaintiff has failed to plead with specificity, as required by Fed. R. Civ. P. 9, facts that support the predicate acts of mail fraud under RICO; and (4) that the Complaint fails to distinguish which defendant committed what fraudulent activity. As Defendants argue, all of these matters are fatal to Plaintiff's RICO claim. Because Plaintiff has waived any opposition to these arguments, the Court holds that he has failed to state a claim upon which relief can be granted with respect to Count II.

Plaintiff's claim for common law fraud, Count III, contains a single paragraph that reads in full:

> Plaintiff re-asserts and re-alleges the preceding paragraphs 1-93, as if fully set forth herein. WHEREFORE, as a result of the defendants' fraudulent activities, Plaintiff requests pecuniary and other actual damages in amounts to be determined at the time of trial, attorneys fees, punitive damages, and such other relief as the court deems appropriate.

(Compl. ¶ 94, ECF No. 1.) Defendants both argue that, for the same reasons Plaintiff failed to state a RICO claim based on wire or mail fraud, he has failed to state with particularity what fraudulent acts were committed, as required by Fed. R. Civ. P. 9, and also failed to put each defendant on notice of the specific fraudulent acts each committed. Because Plaintiff has waived any opposition to these arguments, the Court holds that he has failed to state a claim upon which relief can be granted with

respect to Count III.

The Court has already addressed Count IV in section II(B) above, holding that section 3500.21 does indeed require a borrower to send his QWR to the address designated by the servicer to trigger the servicer's obligations under RESPA. Therefore Plaintiff has also failed to state a claim for which relief can be granted with respect to his claim for declaratory judgment.

### III.

For the foregoing reasons the Court grants Defendants' Motions to Dismiss under Fed. R. Civ. P. 12(c). Because disposition of the motions did not rely on Defendant CMI's new authority, the Court will deny its motion as moot.

The Court will issue an Order and Judgment consistent with this Opinion.


Dated: July 14, 2014                                         /s/ Robert Holmes Bell
                                                             ROBERT HOLMES BELL
                                                             UNITED STATES DISTRICT JUDGE